PHILIP A. OVERCASH #022964
KUTAK ROCK LLP
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ 85253-2742
(480) 429-5000
Philip.Overcash@kutakrock.com

ANGELA PROBASCO #021281
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-6000
Angela.Probasco@kutakrock.com

BRADLEY J. BAUMGART (*pro hac vice*)
KUTAK ROCK LLP
1010 Grand Boulevard, Suite 500
Kansas City, MO 64106-2220
(816) 960-0090
Bradley.Baumgart@kutakrock.com

*Attorneys for Defendant Zurich American Insurance Company*

**UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Robert Barbee,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Zurich American Insurance Company,<br><br>　　　　　Defendant. | Case Number: 2:11-cv-02586-MEA<br><br>**DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR JUDGMENT PURSUANT TO RULE 52**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendant Zurich American Insurance Company ("Zurich"), pursuant to Federal Rule of Civil Procedure 56 and LRCiv 7.2 and 56.1, hereby moves for summary judgment or, in the alternative, for judgment pursuant to Federal Rule of Civil Procedure 52. This motion is supported by the following memorandum of points and authorities, Zurich's separate statement of material facts filed contemporaneously herewith, and all documents, pleadings, and nonelectronic exhibits filed with the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this ERISA action, Plaintiff Robert Barbee seeks Permanent and Total Disability benefits as a result of injuries he sustained in an August 25, 2009 motor vehicle accident under Group Accident Policy No. GTU 4848418 ("Plan") issued by Zurich to The Brink's Company ("Brinks") as the Policyholder.  As discussed below, no genuine issue of material fact exists regarding Barbee's failure to provide Zurich with competent medical authority verifying Permanent and Total Disability or his failure to establish he is Permanently and Totally Disabled as a result of a "bodily injury directly caused by accidental means which is independent of all other causes" as required by the Plan.  Moreover, even if Barbee had provided competent medical authority verifying he is Permanently and Totally Disabled, he would not be entitled to benefits due to the applicability of the Plan's exclusion for loss caused by, contributed to, or resulting from illness or disease.  Accordingly, Zurich did not abuse its discretion in denying Barbee's claim for Permanent and Total Disability benefits and is entitled to judgment as a matter of law pursuant to Rule 56 or Rule 52.

## II.   FACTUAL BACKGROUND[1]

### A.   Barbee's Employment and Medical History Prior to August 25, 2009

Following his graduation from high school in 1985, Barbee worked as a cook, furniture hauler, driver, customer service representative, and security guard.  (Separate Statement of Material Facts ("SOF") ¶¶ 1-3, 5, 8, 18, 20)  In November 1998, Barbee left his job as a furniture hauler because it "was too hard on his body."  (SOF ¶ 4)  Barbee began seeking medical treatment for back pain and related complaints no later than November 2003.  (SOF ¶ 7)  On May 10, 2004, one of Barbee's healthcare providers noted Barbee's "history of fairly symmetrical joint pain and stiffness . . . beginning in March 2003" had caused his job to "become very difficult."  (SOF ¶ 16)  In January 2005, Barbee was

---

[1] Zurich's separate statement of material facts contains a detailed summary of the relevant factual background.  For the sake of brevity and to avoid repetition, Zurich has not included a lengthy recitation of the facts in this motion, but rather incorporates its separate statement of material facts herein.

2

1  diagnosed with arthritis and began seeking medical treatment for his arthritis in addition to
2  his complaints of diffuse musculoskeletal pain and back pain. (SOF ¶ 19)  In September and
3  December 2005, Barbee reported to healthcare providers he had "much difficulty" getting in
4  and out of bed, lifting a full cup or glass to his mouth, and getting in and out of a car.
5  (SOF ¶¶ 22, 25)  He also rated his pain as a ten for severity on a scale of one to ten. (SOF
6  ¶¶ 24, 27)

7        On August 28, 2006, Barbee began working for Brinks as a driver.  (SOF ¶ 36)  In
8  conjunction with his new employee paperwork, Barbee signed several documents
9  acknowledging he had read and understood various documents and policies. (SOF ¶ 37)  In
10 January 2007, Barbee told healthcare providers he could not sleep because of pain.  (SOF
11 ¶ 45)  In April 2008, Barbee told healthcare providers he could not work for a week due to
12 pain. (SOF ¶ 56)  On May 10, 2008, Barbee sustained injuries to his back and neck in a
13 motor vehicle accident; Barbee sought medical treatment from his primary care physician
14 and a chiropractor. (SOF ¶¶ 57-58, 60-64)  In April 2009, Barbee told healthcare providers
15 he was "having difficulty to function" [sic] and was "concerned about not being able to work
16 if he cannot get this [pain] under control." (SOF ¶ 71)  On August 24, 2009, Barbee reported
17 to healthcare providers he had "much difficulty" dressing himself, getting in and out of bed,
18 lifting a full cup or glass to his mouth, walking outdoors on flat ground, washing and drying
19 his entire body, bending down to pick up clothing from the floor, turning regular faucets on
20 and off, and getting in and out of a car. (SOF ¶ 73)  He also rated his pain as a ten for
21 severity on a scale of one to ten. (SOF ¶ 74)

22       **B.**      **August 25, 2009 Accident**

23      On August 25, 2009, Barbee sustained injuries to his back and neck in a motor vehicle
24 accident, including a T12 burst fracture and cervical disc herniation at C4-5. (SOF ¶ 76)  On
25 August 26, 2009, Barbee underwent back surgery during which screws were placed at T10,
26 T11, T12, L1, and L2; he was discharged from the hospital on September 2, 2009. (SOF
27 ¶¶ 77-78)  On October 21, 2009, a CT scan was taken of Barbee's lumbosacral spine, which
28 Randall Porter, M.D., reviewed and remarked "Looks Good." (SOF ¶ 87)  On  January 26,

2010 a CT scan was taken of Barbee's lumbar and thoracic spine, which Dr. Porter reviewed and remarked "OK." (SOF ¶ 111) In a letter dated February 8, 2010, Dr. Porter stated he "would keep [Barbee] off work for the period of 1 year" and "assuming his fracture is well healed and he is, for the most part, not having pain, he likely could go back to work in a sedentary capacity initially and maybe even one that involves physical labor." (SOF ¶ 115) On March 16, 2010, Barbee had a follow-up visit with his primary care physician related to a recent bone scan; the progress notes specifically stated Barbee "has had just about all studies performed which did not reveal any particular issues or problems in the question areas." (SOF ¶ 123)

### C. Barbee's Claim for Permanent and Total Disability Benefits

The Plan provides for the payment of Permanent and Total Disability benefits upon the submission of competent medical authority verifying Permanent and Total Disability. (SOF ¶ 42) "Permanently and Totally Disabled" requires proof "the Insured is totally and continually disabled and cannot work, for any income, at any job that he or she is reasonably suited by education, training or experience to do." (SOF ¶ 41) "Injury" is defined in relevant part as "a bodily injury directly caused by accidental means which is independent of all other causes." (SOF ¶ 43) Zurich has "the discretionary authority to determine eligibility for benefits and to construe the terms of the plan." (SOF ¶ 39)

In a letter dated October 20, 2009, Barbee requested Zurich open a claim under his "Personal Accident Insurance Plan which he is enrolled in through his employer Brinks" related to the injuries he sustained in the August 25, 2009 accident. (SOF ¶ 86) After reviewing the information and documents submitted by Barbee (SOF ¶¶ 86, 94, 98, 101-104, 118-119, 122, 124, 129, 137, 142, 144-145, 152, 154, 157, 163, 165, 166-167, 169, 172, 179, 190, 192-193, 195-196, 199, 201, 207), information and documents provided by Brinks (SOF ¶¶ 97, 150), documents and records obtained independently by Zurich (including Barbee's prescription drug records),[2] video surveillance of Barbee (SOF ¶ 189), and reports

---

[2]Exhibit 5 to this motion is a Rule 1006 Summary Chart Regarding Barbee's Prescriptions before and after the August 25, 2009 accident.

from two independent medical examinations ("IME") of Barbee (SOF ¶¶ 173-175, 202-206), Zurich denied Barbee's claim on July 28, 2011, because Barbee failed to provide competent medical authority verifying he was "Permanently and Totally Disabled as the result of an Injury." (SOF ¶¶ 209-210) Zurich's denial was also based on the Plan's exclusion for loss caused by, contributed to by, or resulting from illness or disease. (SOF ¶ 210)

In the evaluation and administration of Barbee's claim, as in the evaluation and administration of all ERISA-governed claims, the assigned Zurich claim professionals, including the members of the ERISA Review Committee, worked completely separate from and independent of Zurich's finance department. (SOF ¶ 228) The Zurich claim professionals involved in the evaluation and administration of Barbee's claim and all other ERISA-governed claims did not report to Zurich's finance department and were not accountable to Zurich's finance department. (SOF ¶ 229) Zurich's finance department was not involved in directing and did not have any influence on the evaluation and administration of Barbee's claim, nor is Zurich's finance department involved in the evaluation and administration of any ERISA-governed claims. (SOF ¶ 230) The Zurich claim professionals involved in the evaluation and administration of Barbee's claim and all other ERISA-governed claims did not receive, and do not receive, compensation, awards, bonuses, or other financial benefits based upon the value or number of claims they deny or terminate. (SOF ¶ 231) Zurich evaluated and administered Barbee's claim, like all other ERISA-governed claims, in accordance with the language of the Plan and applicable legal standards based on the information submitted by the claimant and the records obtained from third parties to ensure the claim evaluation was accurate regardless of the outcome. (SOF ¶ 232)

On September 23, 2011, Barbee appealed Zurich's denial of his claim, submitting additional documents and information in support of claim. (SOF ¶ 220) On December 5, 2011, after reviewing the additional information and documents submitted by Barbee (SOF ¶¶ 220-221, 223), additional video surveillance of Barbee (SOF ¶ 226), and supplemental IME reports (SOF ¶¶ 224-225), the ERISA Review Committee affirmed the denial of Barbee's claim because "[t]he documents and medical records submitted to date do not

1  establish he is Permanently and Totally disabled as a result of an Injury." (SOF ¶ 227)
2  Having exhausted his administrative remedies, Barbee filed the instant lawsuit on
3  December 29, 2011. (Doc. 1, ¶ 18; Doc. 8, ¶ 18)

4  **III.     LEGAL STANDARDS**

5  Pursuant to Rule 56(a), a district "court shall grant summary judgment if the movant
6  shows that there is no genuine dispute as to any material fact and the movant is entitled to
7  judgment as a matter of law." Facts are material if they "might affect the outcome of the suit
8  under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "A
9  party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to
10 particular parts of materials in the record." Rule 56(c)(1)(A). "Only disputes over facts that
11 might affect the outcome of the suit under the governing law will properly preclude the entry
12 of summary judgment." *Anderson*, 477 U.S. at 248. "In an ERISA action, generally, 'a
13 motion for summary judgment is merely the conduit to bring the legal question before the
14 district court and the usual tests of summary judgment, such as whether a genuine dispute of
15 material fact exists, do not apply.'" *DeBenedictis v. Hartford Life & Accident Ins. Co.*, 701
16 F. Supp.2d 1113, 1124 (D. Ariz. 2010) (quoting *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154
17 (9th Cir. 2009)).

18 "Since a court reviewing for an abuse of discretion must review the administrative
19 record and make something akin to a credibility determination about the plan administrator's
20 decision to deny benefits, the court should set forth findings of fact and conclusions of law
21 pursuant to" Rule 52. *Burke v. Pitney Bowes Inc. Long Term Disab. Plan*, 640 F. Supp.2d
22 1160, 1170 (N.D. Cal. 2009), *aff'd* 392 F. App'x (9th Cir. 2010) (internal quotation and
23 citation omitted). "Accordingly, cross-motions may be decided pursuant to Rule 52 even
24 where one or both parties has styled its motion as a motion for summary judgment." *Id. See*
25 *also Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1217 n.1 (9th Cir.
26 2008) (Rule 52 motion appropriate in ERISA case disputing disability). On a Rule 52
27 motion, the court determines whether the plaintiff is disabled under the policy based on its
28 review of the administrative record. *See Kearney v. Stand. Ins. Co*., 175 F.3d 1084, 1095

(9th Cir. 1999).

IV. **ARGUMENT**

    A. **Zurich's Structural Conflict of Interest Should Be Afforded Little or No Weight by the Court in Determining Whether Zurich Abused Its Discretion.**

Barbee and Zurich have agreed the applicable standard of review is abuse of discretion, with the Court determining the weight to be given to Zurich's structural conflict of interest as both the administrator and payor. (Doc. 27) The parties further stipulated, in accordance with the holding in *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006), the Court's decision on the merits "must rest on the administrative record." (*Id.*) The Court has entered an Order adopting the parties' stipulation. (Doc. 28)

Under the abuse of discretion standard, a "court must consider numerous case-specific factors, including the administrator's conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together." *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009). The structural conflict of interest is "less important (perhaps to vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 126 (2008).

Here, Zurich's structural conflict of interest should be afforded little weight, "perhaps to vanishing point," *Glenn*, 554 U.S. at 126, because Zurich has taken steps to minimize any potential bias and to promote accuracy. The uncontroverted evidence is that Zurich's claims administration is completely separate from and independent of its finance department. (SOF ¶¶ 228-232) Zurich's claim professionals do not report to the finance department, and the finance department plays no part in claims decisions. (SOF ¶¶ 228-230) Zurich's claim professionals do not receive any compensation, awards, bonuses, or other financial benefits based upon the value or the number of claims they deny or terminate. (SOF ¶ 231) Further, Barbee has not identified any evidence of malice, inconsistent reasons for a denial,

1  or self-dealing by Zurich.³ Rather, the administrative record demonstrates Zurich conducted a thorough review of his claim, obtaining documents independently when Barbee was not forthcoming with requested information and records, and commissioned two IMEs. (SOF ¶¶ 174, 204-206, 209, 224-225, 227) Therefore, the Court should afford Zurich's structural conflict of interest little or no weight.

**B.  Zurich Did Not Abuse Its Discretion in Denying Barbee's Claim.**

   **1.  Barbee Failed to Provide Competent Medical Authority Verifying He Is Permanently and Totally Disabled.**

"An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle N.F.L. Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). "A finding is 'clearly erroneous' when although there is evidence to support it," the court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993). In determining whether an administrator abused its discretion in denying benefits, a court considers (1) the weight afforded to any structural conflict of interest, (2) the "quality and quantity of the medical evidence," (3) "whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records," (4) "whether the administrator provided its independent experts with all of the relevant evidence," and (5) "whether the administrator considered a contrary SSA disability determination." *See Montour*, 588 F.3d at 630 (internal quotation and citation omitted).

An administrator is not required to "accord special deference to the opinions of treating physicians." *Black & Decker Disab. Plan v. Nord*, 538 U.S. 822, 831 (2003). Nor is

---
³The only "evidence" cited by Barbee is Zurich's initial position that the benefit amount was $50,000. (Doc. 20, pages 7-10) However, Zurich's position was based on information and documents provided by Brinks, and Zurich changed its position regarding the benefit amount once Brinks provided further information supporting Barbee's contention that the benefit amount was $500,000. (SOF ¶ 162)

8

an administrator bound by the SSA's decision to award disability benefits. *See Montour*, 588 F.3d at 635. When a claim for benefits "is based largely on subjective complaints of pain, it is reasonable for the administrator to consider the claimant's credibility," *DeBenedictis*, 701 F. Supp.2d at 1126, and to use video surveillance "as a means of investigating potentially fraudulent ERISA claims." *Bolt v. Honeywell Int'l Inc.*, 814 F. Supp.2d 913, 927 (D. Ariz. 2011). *See also Hensley v. IBM*, 123 F. App'x 534, 539 (4th Cir. 2004) ("[D]enials of benefits are permissible where the claimant provides only subjective pain complaints and not objective evidence."); *Hoskins v. Bayer Corp. & Bus. Servs. Long Term Disab. Plan*, 564 F. Supp.2d 1097, 1109 (N.D. Cal. 2008) (administrator's denial of benefits not abuse of discretion given Hoskins' failure to submit objective medical records supporting complaints of disability); *Giertz-Richardson v. Hartford Life & Accident Ins. Co.*, 536 F. Supp.2d 1280, 1292 (M.D. Fla. 2008) (administrator "not required to automatically give significant weight to all subjective complaints" especially when complaints are refuted by IME reports and video surveillance).

For example, in *Seleine v. Fluor Corp. Long-Term Disability Plan*, 409 F. App'x 99, 100 (9th Cir. 2010), the Ninth Circuit Court of Appeals affirmed the district court's determination that the administrator did not abuse its discretion in relying on an IME report concluding Seleine's "significant subjective complaints" to be "grossly disproportionate to" "objective findings." The court specifically noted that Seleine's X-rays and MRI, like Barbee's,[4] did not support her subjective complaints of pain and inability to work. *Id*. at 101. *See also Broyles v. A.U.L. Corp. Long Term Disab. Ins. Plan*, 408 F. App'x 67, 69 (9th Cir. 2011) (concluding administrator did not abuse its discretion, in part, because "Broyles' self-reported symptoms were inconsistent with a finding of disabling pain"); *Harper v Unum Life Ins. Co. of Am.*, 621 F. Supp.2d 931, 953 (E.D. Cal. 2008) (administrator did not abuse its discretion because Harper provided only subjective complaints of disability not supported by

---

[4]Both of the IME reports concluded Barbee's complaints of disabling pain were disproportionate to his well-healed injury. (SOF ¶¶ 175, 204) Barbee's own physicians noted "he has had just about all studies performed which did not reveal any particular issues or problems in the question areas" and remarked the X-rays, CT scans, and MRI of his back were "OK" and "look[] good." (SOF ¶¶ 87, 111, 123, 184)

any medical or other objective evidence); *Dolfi v. Disab. Reins. Mgmt. Servs., Inc.*, 584 F. Supp.2d 709, 732 (M.D. Pa. 2008) (administrator did not abuse its discretion, in part, because of "'marked discrepancy' between Ms. Dolfi's subjective complaints of pain and the objective findings," including the absence of corroborating evidence in diagnostic tests).

Similarly, in *Finley v. Hartford Life & Accident Insurance Co.*, 400 F. App'x 198, 200 (9th Cir. 2010), the administrator did not abuse its discretion in concluding Finley's complaints of disabling pain lacked credibility in light of video surveillance of her "performing vigorous yard work requiring the use of her arms in a way that far exceeded her reported abilities." Like Barbee's treating physicians,[5] Finley's treating physicians did not provide a basis for their cursory conclusions "that she could not work." *Id*. "Given Finley's lack of credibility and her doctors' unsupported assertions that she could not work," Hartford's termination of her disability benefits was not an abuse of discretion. *Id*. at 201. *See also Aluisi v. Unum Life Ins. Co. of Am.*, 407 F. App'x 126, 129 (9th Cir. 2010) (administrator did not abuse its discretion because surveillance video "provided objective evidence contradicting Aluisi's assertion that he had unbearable pain"); *Eppley v. Provident Life & Accident Ins. Co.*, 789 F. Supp.2d 546, 572-73 (E.D. Pa. 2011) (administrator's denial of benefits not abuse of discretion because Eppley's subjective complaints of pain not supported by objective medical evidence and contradicted by video surveillance). As this Court has observed, it is "entitled to be suspicious of a plaintiff who is seen hopping in and out of a pickup truck and lifting good sized boxes and who then presents himself to a doctor as being totally disabled from performing even sedentary work." *DeBenedictis*, 701 F. Supp.2d at 1133.

Here, the Plan defines "Permanently and Totally Disabled" to mean "the Insured is totally and continually disabled and cannot work, for any income, at any job that he or she is reasonably suited by education, training or experience to do" and requires that Permanent and Total Disability "be verified by a competent medical authority." (SOF ¶¶ 40-42)

---

[5]Barbee's treating physicians failed to provide any opinion that he is Permanently and Totally Disabled as a result of an Injury sustained in the August 25, 2009 accident. (SOF ¶¶ 115, 183, 219)

Barbee, not Zurich, "at all times bore the burden of establishing [he] was disabled as defined" in the Plan. *Bender v. Hartford Life Ins. Co.*, No. C 09-01163, 2011 WL 3566483, at *14 (N.D. Cal. Aug. 12, 2011).

The record demonstrates Zurich conducted a full and thorough review of Barbee's claim, including the information and records submitted by Barbee, additional information and records obtained independently by Zurich, two IMEs, and video surveillance of Barbee. (SOF ¶¶ 209-210, 227)  Zurich gave Barbee numerous opportunities to provide additional records, specifically requesting Barbee provide competent medical authority supporting his claim and verifying Permanent and Total Disability.  (SOF ¶¶ 120, 155, 168, 191, 209) None of Barbee's treating physicians provided an opinion that Barbee was Permanently and Totally Disabled as a result of injuries sustained in the August 25, 2009 accident.  (SOF ¶¶ 115, 183, 219)  Dr. Porter stated on February 8, 2010 that he "would keep [Barbee] off work for the period of 1 year" and "assuming his fracture is well healed and he is, for the most part, not having pain, he likely could go back to work in a sedentary capacity initially and maybe even one that involves physical labor."  (SOF ¶ 115)  A year later, Dr. Porter reviewed an MRI and X-rays taken of Barbee's back on February 8, 2011 and concluded "looks good."  (SOF ¶ 184)  In January 2011, Dr. Edwards stated Barbee was "unable to return to work because of the *multiple problems* and at this time should be considered totally disabled."  (SOF ¶ 183 (emphasis added))  The "multiple problems" referenced by Dr. Edwards included medical issues and ailments unrelated to the August 25, 2009 accident. (SOF ¶ 183)

The two doctors who performed in-person IMEs of Barbee unequivocally concluded that Barbee is not Permanently and Totally Disabled as the result of injuries he sustained on August 25, 2009.  (SOF ¶¶ 173-175, 202-206, 224-225)  Dr. Powers concluded from a neurological perspective Barbee "has no sequala of his accident," the "amount of pain that he is having is out of proportion to what would be expected from the healed burst fracture both in intensity and distribution."  (SOF ¶ 175)  Dr. Johnson similarly determined Barbee was not permanently and totally disabled as a result of any psychiatric symptoms related to the

August 25, 2009 accident. (SOF ¶ 204) She also expressed her opinion that Barbee has been exaggerating his intellectual and psychological impairment. (SOF ¶ 204)

Dr. Johnson's opinion that Barbee has been exaggerating his impairments is further supported by the video surveillance of Barbee engaging in a number of activities he indicated to his treating physicians and to Drs. Powers and Johnson that he was unable to do, including bending at a ninety-degree angle when leaning into his vehicle without any apparent difficulty or pain, not depending upon the cane for any substantial support, taking several steps when entering his vehicle without using the cane, walking from his car to his apartment without using the cane, bending at a ninety-degree angle to pick up bags of trash and then carrying the bags to his vehicle to place in his trunk with no apparent difficulty, walking from his vehicle to a local convenience store in a normal and unrestricted manner without using the cane, carrying groceries (which included a ten-pound bag of potatoes) and other items from his vehicle into his apartment using both hands and without using his cane, walking backwards to his vehicle while pulling a wheelchair with a large roasting pan on the seat, moving the roasting pan from the wheelchair into the trunk of the vehicle, and pushing a teacart containing a large crockpot without any difficulty. (SOF ¶ 189) Dr. Powers' supplemental IME report dated July 14, 2011 noted Barbee's "mobility and activity on the video is in striking contrast to that which he demonstrated at the time of my clinical examination" and "[t]he surveillance video clearly indicated that [Barbee] is exaggerating his impairments." (SOF ¶ 205) Dr. Powers further opined "[t]his magnitude of change strongly suggests that [Barbee] is consciously manipulating his symptoms for personal gain: *That is malingering*." (SOF ¶ 205 (emphasis added))

The ERISA Review Committee properly affirmed Zurich's denial of benefits because the additional records and information supplied by Barbee did not verify he is Permanently and Totally Disabled. (SOF ¶ 227) Of significance in the supplementary documents submitted by Barbee in support of his appeal is Dr. Porter's September 2011 report in which he notes Barbee "is very limited on activity and cannot lift more than five to ten pounds" and not "able to stand or sit for long periods of time." (SOF ¶ 219) However, Dr. Porter did not

state that Barbee is "permanently and totally disabled," but instead made a referral for Barbee to be evaluated. (SOF ¶ 216, 219)  The September 5, 2011 FCE report, which was based on an underlying assumption that Barbee's assertions regarding his limitations were true, at best merely supports Barbee's assertion that he cannot work as an armored car driver—it does not support the conclusion he cannot work at any job for which he is qualified by education and experience *as required by the Plan*. Of further significance to the ERISA Review Committee was the November 2011 surveillance of Barbee, which showed him frequently walking without a cane or other assistance and carrying and lifting various items in and out of his house. (SOF ¶ 226)

In short, the evidence in the administrative record supports Zurich's decision to deny Barbee's claim because Barbee failed to provide any competent medical authority verifying he is Permanently and Totally Disabled.  Zurich's determination that Barbee is not Permanently and Totally Disabled as a result of an Injury and ensuing denial of benefits were not an abuse of discretion.

   **2. Barbee Is Not Entitled to Benefits Due to the Applicability of the Exclusion for Loss Caused by, Contributed to, or Resulting From Illness or Disease.**

Even if Barbee could be considered to be Permanently and Totally Disabled, which Zurich denies, any disability was not the result of an Injury as defined in the Plan, but rather was the result of an "illness, disease or infection" and, therefore, is excluded from benefits under the Plan.  The credible and undisputed evidence from Barbee's own medical records demonstrates that Barbee suffered from arthritis and complaints of severe, diffuse pain several years before the August 25, 2009 accident. (SOF ¶¶ 7, 9-17, 19, 21-33, 45-51, 53-56)  In addition, Barbee sustained injuries to his neck and back in a May 10, 2008 motor vehicle accident. (SOF ¶ 57)  On April 13, 2009, four months before the August 25, 2009 accident, Barbee reported he believed his condition may interfere with his ability to work. (SOF ¶ 71)  On August 24, 2009, the day before the August 25, 2009 accident, Barbee reported "much difficulty" getting in and out of bed, lifting a glass to his mouth, walking, entering and exiting a car, and bending to pick clothes up from the floor.  He also rated his

pain as a ten for severity on a scale of one to ten. (SOF ¶ 73-74)

Moreover, Dr. Powers concluded Barbee's "current condition fundamentally is a reflection of his depression and narcotic use." (SOF ¶ 175) The SSA's disability determination was not based on Barbee's back injuries or pain, but rather on a Primary Diagnosis of Organic Mental Disorder with a Secondary Diagnosis of Affective Disorder. Barbee's emotional and psychological issues clearly predate the August 25, 2009 accident. (SOF ¶ 158-159, 175, 204) Thus, to the extent Barbee could be considered Permanently and Totally Disabled, the competent medical evidence is that such disability is independent of any injuries sustained in the August 25, 2009 accident. Even if Barbee is Permanently and Totally Disabled, such disability did not result from a "bodily injury directly caused by accidental means which is independent of all other causes" and is otherwise excluded by the exclusion for loss caused by, contributed to, or resulting from illness or disease. *See e.g., Wilkerson v. Riffage.com Disab. Income Prot. Prog.*, No. C-03-04926, 2006 WL 2067845, at *4 (N.D. Cal. July 24, 2006), *aff'd* No. 06-16415, 2008 WL 5169447 (9th Cir. Dec. 10, 2008), (administrator's denial of benefits affirmed because insured acknowledged her primary disabling condition was multiple sclerosis); *Thiel v. Life Ins. Co. of N. Am.*, No. 07-1371, 2008 WL 852489, at *1-2 (6th Cir. Mar. 26, 2008) (administrator did not abuse its discretion in denying benefits because insured's "serious" pre-accident back problems substantially contributed to disability). Zurich's denial of benefits based on the applicability of the illness or disease exclusion was not an abuse of discretion.

**V.     CONCLUSION**

For the foregoing reasons, Zurich respectfully requests that the Court enter judgment in its favor and dismiss Barbee's complaint with prejudice.

Dated this 23rd day of January, 2013.

                                  KUTAK ROCK LLP

                                  By   s/ Angela Probasco
                                        Angela Probasco
                                        1650 Farnam Street
                                        Omaha, NE  68102-2186

                                        Philip A. Overcash
                                        8601 North Scottsdale Road, Suite 300
                                        Scottsdale, AZ  85253-2742

                                        Bradley J. Baumgart (*pro hac vice*)
                                        1010 Grand Boulevard, Suite 500
                                        Kansas City, MO  64106-2220

                                        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of Kutak Rock LLP, and that on January 23, 2013 a true and correct copy of the foregoing was filed with this Court electronically, and was served upon all parties via the operations of the Court's CM/ECF system.

                                            s/   Meghan M. Blinn
                                              Associate Attorney